OPINION OF THE COURT
Ira J. Raab, J.
In a "bait and switch” claim by a hispanic maid to rescind an auto lease due to fraud, the dealer’s summary judgment motion is denied. The court finds serious and material questions of fact as to whether she was fraudently induced to believe that she was "buying”, rather than "leasing”, the car.
The deceptive practice of the within "bait and switch” scheme, as claimed by the plaintiff, is the salesmen’s luring the prospective "sucker”, the plaintiff, through the "bait” of the desirable "purchase” of a Honda Accord LX, and then luring the plaintiff into the "switch” of a less desirable, and more expensive "lease” of a Honda Accord DX.
The plaintiff claims that the salesmen perpetrated this fraudulent scheme upon the plaintiff by taking advantage of her alleged lack of fluency in English, and by getting her to rely upon a Spanish-speaking salesman who falsely convinced her that she was signing a "Purchase Agreement” that included the trade in of her own car which she turned over to defendant Honda, whereas, in reality, she was signing a "Lease Agreement” with defendant JDR, with no reference to the trade-in.
THE ACTION
Plaintiff, Norma Perez, a 33-year-old hispanic domestic, brought this action against defendant auto dealer Hempstead Motor Sales, Ltd., doing business as Hempstead Honda, hereinafter referred to as Honda, and against defendant auto leasing company JDR Leasing and Business Services, Inc., hereinafter referred to as JDR, to rescind an automobile lease agreement, claiming that in a "bait and switch” scheme, defendant Honda’s salesmen fraudently induced her to "lease” an automobile, whereas, she believed she was actually "buying” the automobile.
THE PLEADINGS
The plaintiff’s detailed verified complaint alleges that on January 4, 1995, she brought her 1989 Hyundai to defendant *712 Honda for service. While waiting in the showroom, she was asked by salesman Lenny Lefratta if she would like to lease the 1995 Honda Accord LX she was looking at. She responded that she would only be interested in a purchase. Lefratta stated that she could buy the vehicle for $400 per month for five years, and that her Hyundai could be traded in, with its value applied as a down payment toward the $24,000 purchase price. Plaintiff told Lefratta that her English speaking was not that good and that her English reading was poor and she asked for a Spanish-speaking employee. Lefratta introduced her to Honda salesman Anthony Osae. She told Osae that she only wanted to buy the Honda Accord LX. Plaintiff signed a credit application that was read to her by Osae and she gave Lefratta a $100 deposit check payable to "Hempstead Honda”.
On January 6, 1995, Lefratta told plaintiff that the credit application was approved, but that there were no 1995 Honda Accord LXs in stock. On January 18, 1995, Lefratta told her to come to the showroom, as a 1995 Honda Accord LX was in. Upon arrival, Osae had her sign over to defendant Honda the title to the 1989 Hyundai, as a trade-in toward the purchase of a Honda Accord DX, Osae stating that the DX model was all she could afford based upon her credit rating. He said payments were to be $419 per month for five years, after which she would own the car.
Plaintiff then signed an agreement, which she learned 15 months later, was a JDR Lease Agreement, contrary to the Honda salesmen’s representations that it was a Purchase Agreement.
The complaint seeks a judgment of rescission based upon the salesmen’s known false and deceptive oral material representations, which plaintiff relied upon by believing that she was buying, rather than leasing, the automobile, and that the Honda salesmen acted as the authorized leasing agents for JDR, thereby binding JDR to Honda’s fraudulent actions against plaintiff and others.
The plaintiff also seeks a judgment for the repayment of her $419 per month lease payments to date, $130 registration fee, $350 bank fee, $2,500 as the market value of the 1989 Hyundai, $4,000 as punitive damages, and $1,000 in damages as an award for the deceptive practice and reasonable attorney’s fees pursuant to General Business Law § 349 (h).
The unverified answer of defendant Honda denies the above allegations of the verified complaint and sets forth defenses of accord and satisfaction, equitable estoppel, lack of jurisdiction and the entry into an arm’s length transaction.
*713 The verified answer of defendant JDR also denies the above allegations of the complaint, and sets forth defenses of lack of jurisdiction due to improper service of the summons and complaint, lack of knowledge or privity to any Purchase Agreement between plaintiff and defendant Honda, lack of contract by plaintiff with any JDR agent, servant or employee, thereby negating any liability for misrepresentations, and that the lease was for a fair and reasonable sum for the automobile that plaintiff chose to purchase (sic) based upon her credit report, employment and income. Defendant JDR cross-claims against defendant Honda for indemnification and reasonable attorney’s fees.
THE MOTION
Two months after the case was placed on the calendar, defendant Honda moved for summary judgment dismissing the complaint on the grounds that there are no genuine triable issues of material fact, and that it is entitled to judgment as a matter of law. Plaintiff did not cross-move for summary judgment. Defendant JDR did not cross-move for summary judgment and did not submit any papers in support of or in opposition to defendant Honda’s motion.
The motion is supported by an affidavit by defendant Honda’s president, Julian Bernstein, who had no personal contact with the plaintiff and who has no personal knowledge of the transaction with the plaintiff. The affidavit is based solely upon the following exhibits annexed thereto:
(1) The January 6, 1995 Hempstead Honda binder for the purchase of a new 1995 Honda Accord LX, signed by plaintiff, acknowledging receipt of plaintiff’s $100 down payment check and showing the purchase price as $400 per month for 60 months, including taxes and Motor Vehicles Department charges, $380 for transportation, $20 for processing the registration, and $10 for fuel. Plaintiff’s business and home telephone numbers are the same. The box provided for a lease is not checked.
(2) The undated applicant’s credit statement, signed by plaintiff, showing a cash selling price for a new 1995 Honda Accord as $20,800, payable in 60 monthly payments, and stating that plaintiff is employed by Cladvagh Enter as assistant manager at a salary of $49,000. Unlike the binder, there are different telephone numbers for plaintiff’s residence and employment. The box provided for a lease is not checked. The form states that the vehicle’s title is to be in the name of Hemp-stead Honda.
*714 (3) The January 18, 1995 Lease Agreement, signed by plaintiff, for a new 1995 Honda Accord, which does not show the 1989 Hyundai trade-in, and provides for $419.10 per month payments for 60 months, totaling $25,146, plus a $130 registration fee, $350 bank fee, $8,900 buy-back purchase price and 15 cents per mile per excess monthly mileage over 1,250 miles.
(4) The undated New York State vehicle registration application, signed by plaintiff, for the 1995 Honda, listing JDR as owner and Farmers & Merchants National Bank (hereinafter referred to as Farmers) as lender.
(5) The undated title, signed by plaintiff, as seller, for the 1989 Hyundai. The odometer reading and buyer’s name are blank.
(6) The January 17, 1995 temporary New York State insurance identification card for the 1995 Honda as a replacement vehicle under an existing policy.
(7) The undated insurance binder signed by insurance broker Aquileo Hernandez covering the 1995 Honda Accord DX, effective January 17, 1995, listing Farmers as loss payee and JDR as additional insured.
(8) The January 24, 1995 letter from defendant JDR to plaintiff advising plaintiff where to send her monthly payments for the leased 1995 Honda Accord, and
(9) The summons and verified complaint and the answers of the defendants.
Plaintiff submits her affidavit in opposition, and memorandum of law, which substantially support the allegations of the detailed verified complaint. In addition, plaintiff states that had this been a purchase, the total payment for the vehicle would have been $24,000. As a lease, the total payments for the vehicle, including the $8,900 buy-back and $7,500 excess mileage fee, will be $43,000, almost double the purchase price. She claims that she did not receive a copy of the Lease Agreement until 15 months later, when she asked for a copy upon her boyfriend’s prodding.
Finally, plaintiff annexes to her affidavit in opposition an alleged fictitious pay stub which she discovered during an oral deposition of defendant JDR. She claims that this pay stub falsely shows her to be her employer’s assistant manager at an annual salary of $48,445, whereas in fact, she is only a personal maid, working at the home of her employer. She claims that this pay stub was "created” by defendant Honda so that the alleged fraudulent transaction would be approved by defendant JDR.
*715 In reply to plaintiffs affidavit in opposition, defendant Honda submits an affirmation by its attorney, who has no personal knowledge of any of the transactions. The attorney does not contest any of the claims of the plaintiff, other than pointing to the above-described documents.
Conspicuously absent from defendant Honda’s submissions are affidavits from defendant Honda’s salesmen Lefratta and Osae who had direct, personal knowledge of the transaction with the plaintiff. Defendant Honda gives no reason to explain the absence of such affidavits, which otherwise must be presumed to be available. In addition, defendant Honda does not indicate who filled out the various forms it submitted on this motion. Nor does it explain the origin of the alleged fictitious pay stub.
THE LAW
A motion for summary judgment asks the court to dismiss an opposing pleading and to grant judgment in favor of the movant on the grounds that there is no material question of fact, and that as a matter of law, the movant is entitled to judgment. Both sides are required to support their positions by presenting admissible proof by persons having knowledge of the facts, including relevant documents. In reviewing the submissions, the function of the court is issue finding, rather than issue determination. (CPLR 3212 [b]; Esteve v Abad, 271 App Div 725 [1st Dept 1947]; Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].)
General Business Law § 349 (a) declares unlawful any deceptive acts or practices in the conduct of any business.
General Business Law § 349 (h) authorizes any person who has been injured by reason of any violation of General Business Law § 349 to bring an action to recover his actual damages. The court may, in its discretion, increase the award of damages up to an additional $1,000, if it finds that the defendant willfully or knowingly violated this section. The court may also award reasonable attorney’s fees to a prevailing plaintiff.
In extending a private right of action for violations of General Business Law § 349, the Governor’s Memorandum approving the bill stated: "Consumers have the right to an honest market place where trust prevails between buyer and seller.” (Mem of Governor Rockefeller, 1970 NY Legis Ann, at 472.)
In Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank (85 NY2d 20 [1995]) the elements for a private *716 action for a violation of General Business Law § 349 were set forth as: (1) the conduct complained of must be consumer-oriented; (2) the conduct need not be repetitive or a pattern of deceptive behavior or persistent frauds to the same plaintiff or to other consumers; (3) the transaction must be a typical consumer transaction, rather than a unique private contract dispute; (4) the act or practice that defendant engaged in is deceptive or misleading in a material way; (5) the representations, or omissions, are likely to mislead a reasonable consumer acting reasonably under the circumstances; (6) if the plaintiff seeks treble damages of up to $1,000, the plaintiff must also establish scienter, i.e., the defendant’s intent to defraud or mislead, and (7) the plaintiff has been injured by reason thereof.
The Court of Appeals concluded that there were questions of fact as to whether the acts complained of constituted "deceptive acts or practices”, as used in General Business Law § 349.
In the within action, if defendant Honda’s salesmen conducted themselves in a "bait and switch” scheme, as claimed by the plaintiff, then their conduct violated General Business Law § 349, and defendant Honda is responsible for all appropriate damages thereunder, including the effect of plaintiffs rescission of the Lease Agreement.
A competent person is to be held to the terms of an enforceable written contract, without being able to attack its enforceability by oral representations.
Defendant Honda cites Gillman v Chase Manhattan Bank (135 AD2d 488 [2d Dept 1987], affd 73 NY2d 1 [1988]). In Gill-man, the Appellate Division, Second Department, rejected a claim of illiteracy as a basis for avoiding responsibility under a contract by stating: "The general rule is that if the signer of an agreement could have read it in its entirety, to not have read it was gross negligence. If he could not read it, then he should procure someone to read it for him and to fail to do so is equally negligent. In either case, the agreement is binding upon him [citation omitted].” (Gillman v Chase Manhattan Bank, 135 AD2d, at 491.)
Gillman (supra) is distinguishable from the within case as plaintiff claims that it was Honda’s own Spanish-speaking salesman who falsely read the Agreement to plaintiff.
A person may rescind an otherwise binding contract upon proof of fraud in the inducement, or fraud in the nature of the instrument.
*717 A cause of action for rescission of an alleged fraudulently induced contract requires the pleading and proof of the following elements: (1) a representation made by the defendant, (2) of a material fact, (3) which was false when made, (4) and known by defendant to be false, (5) for the purpose of inducing reliance upon it, (6) that the other party rightfully relied upon the statement, (7) believing that it was true, (8) to the injury of the other party. (See, Brown v Lockwood, 76 AD2d 721 [2d Dept 1980].)
In Asciutto v Barco Auto Leasing Corp. (125 AD2d 431 [1986]) the Appellate Division, Second Department, had before it a case wherein the plaintiff sought to rescind an automobile leasing agreement. The Court affirmed the lower court’s grant of summary judgment and dismissal of the complaint. The oral promise of the defendant concerned a related oral advertising agreement which it had entered into with the plaintiff. The Court ruled that the plaintiff failed to substantiate his allegation that he was induced to enter the automobile lease by the oral promises of the defendants.
DISCUSSION
 In the within action, the court rules that the papers submitted by both sides raise a triable issue of fact with respect to the plaintiff’s allegations that she was induced to enter into the automobile lease agreement by the oral representations of the salesmen.
The movant’s own documentary submissions, coupled with the plaintiff’s affidavit in opposition, which is largely uncontested, unchallenged and uncontradicted by any person with personal knowledge on behalf of defendant Honda, are sufficient to show serious and material questions of fact that preclude the granting of summary judgment and require a trial of this action.
Some of the triable issues of fact, without limitation, include:
(1) The extent to which plaintiff’s lack of fluency in English played any role in the transaction. (Unlike Kenol v Nelson, 181 AD2d 863 [2d Dept 1992], defendant Honda presents no affidavits attesting to plaintiff’s literacy in English.)
(2) Did defendant Honda’s salesmen perpetrate a "bait and switch” fraud upon the plaintiff?
(3) Was the January 5, 1995 binder for the purchase of the new Honda Accord the actual deal intended by the plaintiff?
(4) Did defendant Honda prepare for plaintiff’s signature a deliberately false applicant’s credit statement incorrectly stat *718 ing that the plaintiff, a mere personal home maid, was a $49,000 per year assistant manager?
(5) Does the applicant’s credit statement, which shows the cash selling price of the 1995 Honda Accord as $20,000, support the plaintiff’s contention that she intended to buy, rather than lease the automobile, especially because the box entitled "lease” is not checked?
(6) Did defendant Honda prepare for plaintiff’s signature a deliberately false JDR credit application incorrectly stating that plaintiff’s salary as assistant manager was $49,000 per year?
(7) Was the failure of the lease agreement to mention the conceded trade in of the 1989 Hyundai part of a scheme by defendant Honda to defraud plaintiff?
(8) Did defendant Honda create and submit to defendant JDR a paycheck stub falsely stating plaintiff’s title as assistant manager and plaintiff’s annual salary as $48,445?
(9) Did the defendants fail to give plaintiff a copy of the lease agreement as required by law?
(10) Is the lease agreement void or voidable as unconscionable and unfair dealing with a consumer because the lease required the plaintiff to pay almost double the amount that she would have paid had she bought the automobile, as she believed, rather than leasing the automobile?
(11) Did defendant Honda commit such deceptive acts or practices as prohibited by General Business Law § 349, so as to entitle plaintiff to a $1,000 additional award and reasonable attorney’s fees?
(12) Was the conduct of defendant Honda’s salesman so reprehensible as to warrant punitive damages? (See, AT&T Information Sys. v McLean Bus. Servs., 175 AD2d 652 [4th Dept 1991].)
CONCLUSION
The plaintiff has sufficiently met her burden of proof to defeat defendant Honda’s motion for summary judgment, by raising numerous serious and material issues of fact, which largely are uncontested by any affidavits by persons with personal knowledge on behalf of defendant Honda. Accordingly, the motion is denied.
*719 In view of the denial of the motion for the reasons stated above, the court does not offer an opinion on the collateral issue of whether the motion should be denied because it was made on the eve of trial.