## IN RE SLING MEDIA SLINGBOX ADVERTISING LITIGATION.

### All Actions.

### 15-cv-05388 (GBD)

United States District Court, S.D. New York.

Signed August 12, 2016

MEMORANDUM DECISION
AND ORDER

GEORGE B. DANIELS, District Judge

Plaintiffs Michael Heskiaoff, Marc Langenhol, and Rafael Mann were New York residents who bring this putative class-action lawsuit seeking over $5,000,000 against Defendant Sling Media, Inc. alleging causes of action for violations of California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA").[1] (Consolidated Class Action Complaint ("CAC"), (ECF No. 24), at ¶¶ 5-8, 26-45.) Plaintiffs allege alternative causes of action under the consumer-protection laws of forty-seven other jurisdictions,[2] including under New York General Business Law § 349 ("NY GBL"). (*Id.* at ¶¶ 46-96.) Pending before this Court is Sling Media's motion to dismiss the CAC in its entirety. Sling Media's motion to dismiss is GRANTED.

### I. Background

Sling Media, Inc. is a Delaware corporation with its principal offices located in Foster City, California. (*Id.* at ¶ 8.) Since 1995, Sling Media has produced and sold a device known as a "Slingbox." (*See id.* at ¶ 9.) With the purchase of each Slingbox, Sling Media grants the purchaser a license to use accompanying software, without which the Slingbox device would be useless. (*See id.* at ¶¶ 9, 28; Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Opp. Br."), (ECF No. 33), Exhibit A ("EULA Exh."), (ECF No. 33-1), at 2 ("In order to use and access your Slingbox through your computer or mobile device, you *must* use this Software." (Emphasis added)).) The terms of the license are set forth in a document referred to by the parties as the "End User License Agreement" ("EULA"), which is provided to consumers at the time they purchase a Slingbox.[3] (*See* CAC at ¶ 28.) Used together, the Slingbox and accompanying software (together, "Slingbox System") allow a user to shift media programming from a cable or satellite box to a remote device, such as a computer, tablet or smartphone. (*Id.* at ¶ 9.) In other words, the Slingbox System allows consumers to watch the cable or satellite TV programming they have access to in their home on another device anywhere in the world. (*Id.*)

---

1. Cal. Bus. & Prof. Code § 17200, *et seq.*, Cal. Bus. & Prof. Code, § 17500, and Cal. Civ. Code §§ 1750, *et seq.*, respectively.

2. The CAC brings causes of action under the laws of the District of Columbia and all other States save Alabama, Iowa, and Mississippi.

3. The CAC refers to this document as the "Sling Player Software License Agreement and Warranty." (CAC at ¶ 28.) However, the document actually appears to be titled "Sling-Player (Universal Edition) Software License Agreement and Warranty." (*See* EULA Exh. at 2.)

Plaintiffs' complaint specifically alleges that Sling Media represents to consumers that its product works in the following manner: "According to Sling Media's website, it offers 'products and solutions that empower you to watch your home TV—including 100% of the content you already pay for—anywhere in the world, on any Internet-connected device.'" (*Id.* at ¶ 8.) "[T]he Slingbox provides the facility for consumers to stream and view content provided, licensed, or sold by third parties, *i.e.*, broadcast, satellite, and cable networks." (*Id.* at ¶ 10.)

In late 2014, for the first time, Sling Media began transmitting its own advertising content through its Slingbox Systems (thus subjecting users to more advertising than the ordinary commercials which are inherent in TV programming itself). (*Id.* at ¶ 12.) These advertisements appear "after product startup," as well as "alongside streamed ... content."[4] (*Id.*) It is alleged that "[t]his ad placement negatively impacted the experience of Slingbox owners and the value of its product to its installed base of consumers ...." (*Id.* at ¶ 4.) Plaintiffs allege that "[a]t no time did Sling Media disclose that it would force consumers to view its advertising content—alongside the streamed third-party content—and consumers had no reason to believe that they would be forced to view Defendant's advertisements while using the Slingboxes which they had purchased." (*Id.* at ¶ 11.)

Sling Media's advertising became ubiquitous by March 17, 2015. (*Id.* at ¶ 12.) The EULA does not contain any reference whatsoever to advertising.[5] (*See* EULA Exh.) Nor do Plaintiffs allege that they were aware that their viewing experience would be free of Sling Media advertisements before they decided to purchase their Slingbox Systems.

Each of the named Plaintiffs purchased a Slingbox in New York while residing in New York.[6] (*Id.* at ¶¶ 2, 5-7.) Each Plaintiff alleges that "[a]t no time was [Plaintiff] informed by Sling Media or its agents prior to his purchase that the use of his Slingbox would be subject to its advertising or that advertisements would be displayed during use of the product he purchased from Defendant." (*Id.* at ¶¶ 5, 6, 7.) They contend that Sling Media's failure to inform consumers of its intention to display its own advertising through the Slingbox System, and its subsequent unilateral imposition of this unwanted advertising, violated California's consumer-protection statutes, and with regard to additional class members, the consumer-protection

4.  At oral argument, the parties provided additional details regarding these two types of Sling Media advertisements. The first type refers to a video advertisement that appears when users first accesses the Sling Media software (*i.e.*, application or app) on their tablet, etc. After a few seconds, most likely five to fifteen, users can opt to skip the remaining portion of the video advertisement and proceed to utilize their Slingbox Systems as they like. These advertisements can be analogized to the commercial advertisements that sometimes appear when accessing a YouTube video. (*See* Oral Argument Transcript, (ECF No. 38), at 13:7-12.) The second type of advertisement is referred to as a "banner advertisement." A banner advertisement does not contain video or sound, but is simply a thin billboard-like band that appears at the edge of a screen. The banner advertisement disappears when users view their TV content full screen. (*See id.* at 13:4-6.) Additionally, it appears that Slingbox users can purchase an app if they prefer an "ad-free experience." (*See id.* at 17:15-18.)

5.  On a motion to dismiss, the Court "may consider any written instrument ... incorporated into the complaint by reference ...." *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir.2000)).

6.  Langenohl is now a citizen of the State of Florida. (CAC at ¶ 6.)

statutes of forty-seven other jurisdictions where class members may have purchased Slingbox Systems. The basis of Plaintiffs' claims is that "Sling Media failed to disclose that the use of the product would be contingent upon and subject the purchaser to unrequested advertising from Defendant." (*Id.* at ¶ 3.) Plaintiffs seek an injunction prohibiting Sling Media from transmitting its own advertising, as well as money damages.

## II. Failure to State a Claim

Defendants move to dismiss the CAC pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a "complaint must contain sufficient factual matter ... to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks and citation omitted). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A. Choice of Law

To determine whether Plaintiffs have pleaded facts sufficient to state a claim, this Court must first determine under which jurisdictions' substantive law the named Plaintiffs' allegations must be analyzed. New York's choice-of-law principles [7] dictate that New York substantive law governs Plaintiffs' claims, since the named Plaintiffs purchased their Slingbox Systems in New York and were residents of New York at the time of their purchases.[8]

Plaintiffs maintain that they may proceed under California's consumer-protection statutes by virtue of a choice-of-law provision that Sling Media included in the EULA. The provision provides:

> If you are a customer in the United States, then *this Agreement* will be governed by and construed in accordance with the laws of the State of California, without regard to or application of conflicts of law rules or principles.

(EULA Exh. at 6 ¶ 12 (emphasis added); CAC at ¶ 28 (emphasis added).)

---

7. The parties do not dispute that New York's choice-of-law rules apply. *See Johnson v. Nextel Commc'ns Inc.,* 780 F.3d 128, 141 (2d Cir.2015) (federal court generally must apply the choice-of-law principles of the state in which it sits).

8. *See In re Grand Theft Auto Video Game Consumer Litig.,* 251 F.R.D. 139, 149–50 (S.D.N.Y.2008) (under New York's interest analysis approach, the law of the state in which a consumer purchased the product governs the consumer's claims); *Mendy v. JP Morgan Chase & Co.,* No. 12–cv–8252 (PGG), 2014 WL 1224549, at *7 (S.D.N.Y. Mar. 23, 2014) (under New York's interest test, "the jurisdiction with the greater interest is the one in which the injury to the plaintiff is suffered.") (quoting *Watts v. Jackson Hewitt Tax Serv. Inc.,* 579 F.Supp.2d 334, 345 (E.D.N.Y.2008) (citing *Krock v. Lipsay,* 97 F.3d 640, 646 (2d Cir.1996) and *Sack v. V.T. Low,* 478 F.2d 360, 365 (2d Cir.1973))) (alteration omitted); *Szymczak v. Nissan N. Am., Inc.,* No. 10–cv–7493 (VB), 2011 WL 7095432, at *12 (S.D.N.Y. Dec. 16, 2011) ("States have no interest in applying their consumer protection statutes to buyers who live out of state and whose purchases occur out of state."); *In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.,* 701 F.Supp.2d 356, 379 (E.D.N.Y.2010) ("Generally, consumer fraud cases are governed by the law of the state where the consumer resides."); *Mosley v. Vitalize Labs, LLC,* Nos. 13–cv–2470 (RJD) and 14–cv–4474 (RJD), 2015 WL 5022635, at *9 (E.D.N.Y. Aug. 24, 2015) (dismissing New York and New Jersey consumer-protection claims because plaintiff only purchased in California).

■ Contractual choice-of-law provisions are generally enforceable under New York law. *See Terwilliger v. Terwilliger,* 206 F.3d 240, 245 (2d Cir.2000) (quoting *Marine Midland Bank, N.A. v. United Missouri Bank, N.A.,* 223 A.D.2d 119, 643 N.Y.S.2d 528, 530 (N.Y.App.Div.1996)). But "[t]he effect of [a] choice-of-law clause depends on ... its scope." *Fin. One Pub. Co. v. Lehman Bros. Special Fin.,* 414 F.3d 325, 332 (2d Cir.2005). "New York courts decide the scope of such clauses under New York law, not under the law selected by the clause ...." *Id.* at 333 (citing *J.A.O. Acquisition Corp. v. Stavitsky,* 192 Misc.2d 7, 745 N.Y.S.2d 634, 638 (Sup.Ct.N.Y.County 2001)).

■■ Under New York law, "in order for a choice-of-law provision to apply to claims for tort[s] arising incident to [a] contract, the express language of the provision must be sufficiently broad as to encompass the entire relationship between the contracting parties." *Krock v. Lipsay,* 97 F.3d 640, 645 (2d Cir.1996) (citation and internal quotation marks omitted). Where the choice of law provision states only that " 'this [contract] shall be governed by and construed in accordance with the laws of [a particular state]' .... [there is] no way such language can be read broadly enough to apply to [tort claims]." *Id.* (original alteration omitted); *see also Fin. One,* 414 F.3d at 335 ("Under New York law, ... tort claims are outside the scope of con-

tractual choice-of-law provisions that specify what law governs construction of the terms of the contract ...."); *Plymack v. Copley Pharm., Inc.,* No. 93–cv–2655 (KMW), 1995 WL 606272, at *5 (S.D.N.Y. 1995) (under New York law, "[a] contractual choice-of-law provision ... does not bind the parties with respect to non-contractual causes of action").

■ The EULA provides only that *"this Agreement* will be governed and construed in accordance with the laws of ... California ...." (EULA Exh. at 6 ¶ 12 (emphasis added); CAC at ¶ 28 (emphasis added).) Plaintiffs do not allege contractual breaches of the EULA. Rather, they allege violations of California's consumer-protection statutes, which sound in fraud. *See Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126–27 (9th Cir.2009) (indicating that claims under California's consumer protection statutes based on defendant's "nondisclosure" usually sound in fraud). The EULA does not grant Slingbox purchasers outside of California the right to bring California consumer-protection claims. Thus, New York's choice-of-law principles provide that New York Plaintiffs must proceed under New York substantive consumer-protection law.[9]

### B. New York General Business Law § 349

■ Having established that New York law applies, this Court must decide wheth-

---

**9.** Nor do Plaintiffs allege a cause of action for a breach of the implied covenant of good faith and fair dealing—a cause of action to which the EULA's choice-of-law provision might apply. *See Commerce & Indus. Ins. Co. v. U.S. Bank Nat'l Ass'n* No. 07–cv–5731 (JGK), 2008 WL 4178474, at *4 (S.D.N.Y. Sept. 3, 2008) (under New York choice-of-law rules, a breach of the implied covenant of good faith and fair dealing "is treated as a breach of the underlying contract for the purposes of applying a choice of law provision"). Even if Plaintiffs had alleged causes of action for breach of contract or the implied covenant of good faith

and fair dealing, and California law applied to those claims, New York law would still govern Plaintiffs' statutory consumer-protection claims. *See Lewis Tree Serv. v. Commerce Funding, Inc.,* 239 F.Supp.2d 322, 327–28 (S.D.N.Y.2002) (parties' choice-of-law clause applied only to common-law contract claims, not to fraud claims); *Comprehensive Habilitation Serv. v. Commerce Funding, Inc.,* 2009 WL 935665, at *10–11 (S.D.N.Y. Apr. 7, 2009) (applying Virginia law, consistent with contractual choice-of-law provision, to contract claim, but New York law to "tort and quasi-contract" claims).

er Plaintiffs have sufficiently alleged that Sling Media violated New York General Business Law Section 349. A plaintiff asserting such a cause of action must plead factual content that allows a court to draw the reasonable inference that: "(1) 'the defendant has engaged in an act or practice that is deceptive or misleading in a material way'; (2) the 'plaintiff has suffered injury by reason thereof'; and (3) the deceptive act or practice is 'consumer oriented.'" *See Koch v. Greenberg,* 14 F.Supp.3d 247, 261 (S.D.N.Y.2014), *aff'd* 626 Fed.Appx. 335 (2d Cir.2015), (quoting *Gaidon v. Guardian Life Ins. Co. of Am.,* 94 N.Y.2d 330, 343–44, 725 N.E.2d 598, 704 N.Y.S.2d 177 (1999)).

It is readily apparent, and Sling Media does not dispute, that its conduct was "consumer oriented." Sling Media acted in a uniform manner with respect to all Slingbox System purchasers, who are consumers as contemplated by GBL § 349. *See Gaidon,* 94 N.Y.2d at 334, 704 N.Y.S.2d 177, 725 N.E.2d 598 (conduct was "consumer oriented" because conduct was not limited to private contract dispute).

■ Sling Media does dispute, however, whether the CAC plausibly alleged that it engaged in an act or practice that is deceptive or misleading. Both affirmative representations and omissions may qualify as deceptive or misleading acts or practices. The CAC, however, does not assert any affirmative statement made by Sling Media related to advertising that was deceptive or misleading. Plaintiffs have not stated a cause of action on this basis.[10]

■ Omissions are actionable "where the business alone possesses material information that is relevant to the

consumer and fails to provide this information." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,* 647 N.E.2d 741, 85 N.Y.2d 20, 26 (1995). The key, of course, is that the defendant "possess" the information that the plaintiff claims it improperly withheld. Thus, plaintiffs pursuing an omission-based claim must "plausibly allege[ ] that the ... [d]efendants *had knowledge* of the [material information] and failed to disclose or actively concealed such information ...." *Woods v. Maytag Co.,* 807 F.Supp.2d 112, 129 (E.D.N.Y.2011); *see also Tomassini v. FCA US LLC,* Case No. 3:14–cv–1226 (MAD/DEP), 2015 WL 3868343, at *6–*7 (N.D.N.Y. June 23, 2015) (analyzing whether plaintiff had sufficiently pleaded facts demonstrating defendant's knowledge of information defendant allegedly failed to disclose). In other words, a defendant's failure to reveal facts about which even it was unaware at the time will not lead to liability under § 349.

■ Plaintiffs have failed to plead facts sufficient to lead to the reasonable inference that Sling Media had knowledge of a plan to disseminate advertising at the time Plaintiffs purchased their Slingbox Systems, and therefore, that Sling Media engaged in a deceptive or misleading act or practice. The CAC alleges that Sling Media sold Slingboxes for "decades" without airing its own advertisements, but completely fails to allege any facts suggesting when Sling Media might have developed its plan to display its own advertisements. Furthermore, the CAC fails to plead any facts regarding when Plaintiffs purchased their Slingbox Systems. Because this Court is left speculating as to whether

---

**10.** Although the CAC repeatedly references "advertising" and "misrepresentations," it fails to describe them, and therefore does not plausibly plead any misleading statements sufficient to survive a motion to dismiss. *Chiste v. Hôtels.com L.P.,* 756 F.Supp.2d 382,

404 (S.D.N.Y.2010) (holding conclusory allegations that defendant made misleading statements, without identifying any such statements alleged to have been misleading, insufficient to survive a motion to dismiss).

Sling Media had knowledge of the information Plaintiffs allege it failed to disclose at the time Plaintiffs made their purchases, Plaintiffs have failed to adequately plead that they were victims of a deceptive or misleading act or practice.[11]

The CAC also failed to allege facts indicating that Sling Media's failure to reveal this information was a "material" deception. Not all deceptive acts or practices are actionable under § 349; only those acts or practices that are "likely to mislead a reasonable consumer *acting reasonably under the circumstances.*" *Oswego*, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741, (emphasis added). Stated another way, a "material claim is one that involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Bildstein v. MasterCard Int'l Inc.*, 329 F.Supp.2d 410, 414 (S.D.N.Y.2004) (employing "materiality" standard applicable to evaluating claims under section 5 of the Federal Trade Commission Act, on which GBL § 349 is modeled) (alterations, citations and internal quotation marks omitted).[12]

The CAC's allegations reveal that consumers purchase Slingbox Systems to: (1) watch live or recorded programming that they have already purchased from a cable or satellite provider; (2) on another device; (3) anywhere in the world. The CAC does not provide any facts regarding the advertisements themselves, such as how often they appear, for how long, how they can be proactively terminated, skipped or otherwise avoided by the viewer, etc.[13] Moreover, the CAC does not allege that, at the time of purchase, Plaintiffs expected or were even aware that Sling Media provided an "ad-free experience."[14] Thus, the CAC has failed to plausibly allege that "reasonable consumers acting reasonably under the circumstances" cared or would care enough about the imposition of these advertisements that Sling Media's failure to disclose a future plan to disseminate advertisements was a "material" omission. *See Oswego*, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 ("[T]he statute surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation.").

Finally, the CAC has failed to allege that Sling Media's acts or practices caused Plaintiffs "actual" injury. *See Stutman*, 95 N.Y.2d at 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 ("[A] plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm."). Typically, tort law recognizes several types of harm which might be cognizable as a legal injury, such as physical, emotional, pecuniary or reputational harm, or the impairment of a recognized legal right. *See*

11. Sling Media also argues that Plaintiffs have failed to establish that they have Article III standing because Plaintiffs have failed to allege that they purchased *after* Sling Media formed its plan to begin advertising, but *before* advertising was apparent. However, in light of Plaintiffs' failure to state a cause of action under GBL § 349, this Court need not further analyze Sling Media's standing argument.

12. This standard does not, however, impose a requirement that the consumer have relied on the materially deceptive or misleading act or practice. *Stutman v. Chem. Bank*, 95 N.Y.2d

24, 30, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000) ("[R]eliance is *not* an element of a section 349 claim." (emphasis in original)).

13. Additionally, it appears that Slingbox users can purchase an app if they prefer an "ad-free experience." (*See* Oral Argument Transcript at 17:15-18, 23:1-24:10.)

14. *See* Opp. Br. at 9 n.4; *compare id.* (arguing that *"ad-free* experience" was part of bargain), *with* CAC at ¶ 10 (quoting Sling Media's website regarding "experience" Sling Media promises, but not representing that "experience" would be "ad-free").

RESTATEMENT (SECOND) OF TORTS § 7 (2016) (explaining the difference between "injury" and "harm" and "alterations"). Plaintiffs do not allege that they can no longer use their Slingbox units to watch television programming, or that they now face additional costs to view content. Instead, Plaintiffs merely allege that when they purchased their Slingbox Systems Plaintiffs did not have to view unrequested advertisements, and after March 17, 2015, they were subjected to unwanted advertisements.[15] The CAC is devoid of any allegations regarding how this alteration, which may be beneficial, detrimental or of no consequence based on consumers' personal tastes, likes, or dislikes, constituted or caused Plaintiffs' the type of harm that might qualify as an "actual injury" within the meaning of GBL § 349.[16] Thus, Plaintiffs have failed to sufficiently allege that Sling Media's acts or practices caused them "actual injury" to plausibly state a GBL § 349 claim that is entitled to relief.[17]

## III. Conclusion

The Defendants' motion to dismiss the CAC is GRANTED. The Clerk of the Court is directed to close the motion docketed as ECF No. 28. Plaintiffs may move within thirty (30) days, by letter application with an attached proposed amended complaint, for leave to amend if amendment would not be futile.

SO ORDERED.

---

15. Plaintiffs further allege that had Sling Media not failed to disclose its advertising plan, "consumers or would have been unwilling to pay the price they, in fact, purchased them for." (CAC at ¶ 96.) This allegation is also insufficient to adequately plead GBL § 349's "actual injury" element. *See Small v. Lorillard Tobacco Co., Inc.,* 94 N.Y.2d 43, 56, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999) (stating consumers who buy a product that they would not have purchased absent deceptive conduct, without more, have not suffered injury).

16. The harm alleged in all of the cases cited by Plaintiffs fits into one of the categories enumerated by this Court. *See Cohen v. JP Morgan Chase & Co.,* 498 F.3d 111, 126–27 (2d Cir.2007) (pecuniary harm); *Campbell v. MBI Assocs., Inc.,* 98 F.Supp.3d 568 (E.D.N.Y.2015) (court declined to address "injury element," but $5.00 charge based on misrepresentation appears to be alleged injury); *Riordan v. Nationwide Mut. Fire Ins. Co.,* 756 F.Supp. 732 (S.D.N.Y.1990) (impairment of legal right established by contract); *Emilio v. Robinson Oil Corp.,* 28 A.D.3d 417, 418, 813 N.Y.S.2d 465 (2d Dep't 2006) (pecuniary harm); *People v. Wilco Energy Corp.,* 284 A.D.2d 469, 471, 728 N.Y.S.2d 471 (2d Dep't

2001) (pecuniary harm); *Negrin v. Norwest Mortg, Inc.,* 263 A.D.2d 39, 51, 700 N.Y.S.2d 184 (2d Dep't 1999) (pecuniary harm); *Relativity Travel, Ltd. v. JP Morgan Chase Bank,* 13 Misc.3d 1221(A), at *3, 831 N.Y.S.2d 349 (N.Y. Sup. Ct. New York County 2006) (pecuniary harm); *Anonymous v. CVS Corp.,* 188 Misc.2d 616, 625, 728 N.Y.S.2d 333 (N.Y. Sup. Ct. New York County 2001) (impairment of legal right); *Perez v. Hempstead Motor Sales,* 173 Misc.2d 710, 662 N.Y.S.2d 184 (Nassau County Dist. Ct., 1st Dep't 1997) (pecuniary harm).

17. To the extent Plaintiffs allege that their injury is the impairment of a legal right established by contract, they have failed to plausibly allege such an injury. Plaintiffs have not asserted a breach of contract claim nor alleged a specific contractual benefit they have not received. The EULA contains no reference whatsoever to advertising. Additionally, Plaintiffs did not purchase the software, but merely licensed it, and there is nothing within the EULA prohibiting Sling Media from modifying the software of which it retained ownership.