[886 NYS2d 121]

Dan Rather, Respondent-Appellant, v CBS Corporation, Appellant-Respondent, and Viacom, Inc., et al., Respondents.

First Department, September 29, 2009

### APPEARANCES OF COUNSEL

*Weil, Gotshal & Manges LLP*, New York City (*James W. Quinn, Mindy J. Spector* and *Yehudah L. Buchweitz* of counsel), and *CBS Law Department*, New York City (*Anthony M. Bongiorno* and *Mary Catherine Woods* of counsel), for appellant-respondent and respondents.

*Sonnenschein Nath & Rosenthal LLP*, New York City (*Martin R. Gold, Gary Meyerhoff, Edward J. Reich, Daniel Pancotti* and *Zhubin Parang* of counsel), for respondent-appellant.

### OPINION OF THE COURT

CATTERSON, J.

This action asserting breach of contract and related tort claims arises out of a September 8, 2004 broadcast that plaintiff Dan Rather narrated on the CBS 60 Minutes II television program about then President George W. Bush's service in the Texas Air National Guard. Rather alleges that CBS disavowed the broadcast after it was attacked by Bush supporters, and fraudulently induced him to apologize personally for the broadcast on national television as well as to remain silent as to his belief that the broadcast was true. Rather alleges that, following President Bush's reelection, CBS informed him that he would be removed as anchor of the CBS Evening News. Rather claims that although his employment agreement required that, in the event he was removed as anchor, CBS would make him a regular correspondent on 60 Minutes or immediately pay all amounts due under the agreement and release him to work elsewhere, CBS kept him on the payroll while denying him the opportunity to cover important news stories until May 2006 when it terminated his contract, effective June 2006.

Rather commenced this action against CBS Corporation, Viacom Inc., and individual defendants Leslie Moonves, Sumner Redstone and Andrew Heyward in September 2007. He asserted, inter alia, claims of breach of contract and breach of fiduciary duty against CBS, claims of fraud against CBS and the individual defendants and a claim of tortious inducement of breach of contract against Viacom and the individual defendants.

Now, Rather appeals and defendants CBS Corporation and Viacom Inc. cross-appeal from orders entered by Supreme Court on April 11, 2008 and September 23, 2008, which granted

defendants' motion to dismiss the claims for fraud, breach of the implied covenant of good faith and fair dealing and tortious interference with contract, and denied defendants' motion to dismiss the claims for breach of contract and breach of fiduciary duty.

For the reasons set forth below, this Court finds that the motion court erred in denying the defendants' motion to dismiss the claims for breach of contract and breach of fiduciary duty, and therefore we find the complaint must be dismissed in its entirety.

As a threshold matter, we find that Rather's appeal from the portion of the April 11, 2008 order that dismissed his fraud claims against the individual defendants was not rendered academic by his service of an amended complaint against the remaining defendants. (*See Velez v Feinstein*, 87 AD2d 309, 312-313 [1982], *lv dismissed in part and denied in part* 57 NY2d 737 [1982].) Moreover, for reasons set forth below, we find that Rather's service of a second amended complaint does not render moot his cross appeal from that portion of the September 23, 2008 order that dismissed his fraud claim. On the record before us, we assume, without deciding, that Rather's claim of breach of the implied covenant of good faith and fair dealing asserted as against CBS in the original complaint may also properly be reviewed. (*Cf. O'Ferral v City of New York*, 8 AD3d 457, 459 [2d Dept 2004] [since court granted leave to file amended complaint that superseded original complaint, issue of disposition of claim included in original but not in amended complaint is academic].)

At the outset, we find that Supreme Court erred in declining to dismiss Rather's breach of contract claim against CBS. Rather alleges that he delivered his last broadcast as anchor of the CBS Evening News on March 9, 2005, and that, since he was only nominally assigned to 60 Minutes II and then 60 Minutes, he should have received the remainder of his compensation under the agreement in March 2005. Rather claims that, in effect, CBS "warehoused" him, and that, when he was finally terminated and paid in June 2006, CBS did not compensate him for the 15 months "when he could have worked elsewhere." This claim attempts to gloss over the fact that Rather continued to be compensated at his normal CBS salary of approximately $6 million a year until June 2006 when the compensation was accelerated upon termination, consistent with his contract.

Contractually, CBS was under no obligation to "use [Rather's] services or to broadcast any program" so long as it continued to

pay him the applicable compensation. This "pay or play" provision of the original 1979 employment agreement was specifically reaffirmed in the 2002 Amendment to the employment agreement.

That Amendment also provided, in subparagraph 1 (g), that if CBS removed Rather as anchor or co-anchor of the CBS Evening News and failed to assign him as a correspondent on 60 Minutes II or another mutually agreed-upon position, the agreement would be terminated, Rather would be free to seek employment elsewhere, and CBS would pay him immediately the remainder of his weekly compensation through November 25, 2006.

We agree that subparagraph 1 (g) must be read together with subparagraph 1 (f), which provided that if CBS removed Rather from the CBS Evening News, it would assign him to 60 Minutes II "as a full-time Correspondent," and if 60 Minutes II were canceled, it would assign him to 60 Minutes as a correspondent "to perform services on a regular basis." However, this construction does not render any language of the agreement inoperative, since, consistent with the "pay or play" clause, neither subparagraph 1 (g) nor 1 (f) requires that CBS actually *use* Rather's services or broadcast any programs on which he appears, but simply retains the option of accelerating the payment of his compensation under the agreement if he is not *assigned* to either program.

It is clear that subparagraph 1 (g) applies only to a situation where CBS removed Rather as anchor of CBS Evening News and then failed to assign him "as a Correspondent on 60 Minutes II." The amended complaint alleges that when Rather no longer performed anchor duties at CBS, he was assigned to 60 Minutes II. Thus, Rather implicitly concedes that CBS fully complied with subparagraph 1 (g).

Supreme Court erred in finding that subparagraph 1 (g) modified the "pay or play" provision when it ignored the initial prefatory clause to the rest of that subparagraph, which states "[e]xcept as otherwise specified in this Agreement." As the defendants correctly assert, the seven words are crucial because they require subparagraph 1 (g) to be read together with the "pay or play" provision, and thus, subparagraph 1 (g) cannot modify the "pay or play" provision to mean that CBS must utilize Rather in accordance with some specific standard by featuring him in a sufficient number or types of broadcasts. As the defendants aptly observed, "the notion that a network would

cede to a reporter editorial authority to decide what stories will be aired is absurd."

■ ■ Rather's claim for lost business opportunities due to CBS's failure to release him to seek other employment is insufficiently supported. Since, according to Rather's own allegations, an immediate result of the September 8, 2004 broadcast was criticism that he was biased against Bush, it would be speculative to conclude that any action taken by CBS would have alone substantially affected his market value at that time. Rather's claim for damages for loss of reputation arising from the alleged breach of contract is not actionable. (*Dember Constr. Corp. v Staten Is. Mall*, 56 AD2d 768 [1st Dept 1977].)

■ Rather's cause of action for breach of fiduciary duty must also be dismissed. Supreme Court held that the issue of "whether a fiduciary duty has been created in the course of the long relationship between Rather and CBS is really a question of fact." Previously, the court determined that "the length of [Rather's] contractual relationship with CBS, and the nature of the service that [Rather] performed under his contracts" created an issue of fact that could not be resolved on motion. This was error.

Rather claims that his "four-decade history" with CBS constituted a "special relationship that imposed fiduciary duties upon CBS toward [Rather]." The law in this Department, and indeed enunciated in every reported appellate-division-level case, is that employment relationships do not create fiduciary relationships. Simply put, "[the employer] did not owe plaintiff, as employee, a fiduciary duty." (*Angel v Bank of Tokyo-Mitsubishi, Ltd.*, 39 AD3d 368, 370 [1st Dept 2007], citing *Weintraub v Phillips, Nizer, Benjamin, Krim & Ballon*, 172 AD2d 254 [1st Dept 1991]; *see Schenkman v New York Coll. of Health Professionals*, 29 AD3d 671, 672 [2d Dept 2006] ["(employees) failed to plead any facts demonstrating how the arm's length, employer-employee relationship . . . gave rise to any fiduciary duty"]; *Cuomo v Mahopac Natl. Bank*, 5 AD3d 621, 622 [2d Dept 2004], *lv denied* 3 NY3d 607 [2004].)

The length of Rather's tenure at CBS is irrelevant to, and does not support, this claim of a fiduciary relationship (*see e.g. Michnick v Parkell Prods.*, 215 AD2d 462 [2d Dept 1995]), nor does Rather's status as "the public face of CBS News after Walter Cronkite retired." (*See e.g. Maas v Cornell Univ.*, 245 AD2d 728 [3d Dept 1997].)

Supreme Court's reliance on *Apple Records v Capitol Records* (137 AD2d 50 [1st Dept 1988]) and *Wiener v Lazard Freres &*

*Co.* (241 AD2d 114 [1st Dept 1998]) was also error. Unlike in *Apple Records*, where fledgling musicians ultimately became a worldwide music phenomenon known as the Beatles, Rather was an established correspondent represented by a leading talent agent, who negotiated a contract that was extensively amended several times, that paid Rather a lucrative salary, and that detailed, in 50 pages, everything from his assignments and on-air work at CBS Evening News to requirements that he attend rehearsals and join the union. (*See Faulkner v Arista Records LLC*, 602 F Supp 2d 470, 484 [SD NY 2009] ["there are no facts here to suggest that the dealings between the Rollers and Arista were anything other or more than garden-variety arm's length transactions"].)

The *Apple Records* Court also made plain that the defendant was not only the exclusive distributor of and manufacturer of the Beatles' recordings but also that the Beatles "entrusted their musical talents" to the defendant over a period of many years commencing when the Beatles were "still unacclaimed." (*Apple Records*, 137 AD2d at 57.) No such exclusive distributor relationship exists in the instant case (*see e.g. Zimmer-Masiello, Inc. v Zimmer, Inc.*, 159 AD2d 363 [1st Dept 1990]), nor can Rather argue that he "entrusted" his particular talents to CBS. Indeed, it may well be that *Apple Records* will remain a singular holding because of its application to a phenomenon (unacclaimed artists who were also unsophisticated businessmen thrust to the pinnacle of success at warp speed) that's not likely to be seen again, not even on American Idol.

Similarly, Supreme Court improperly relied on *Wiener*, where we found that the plaintiff specifically alleged that employees of the defendant acted on the plaintiff's behalf in conducting negotiations with a bank, and that they relied on the defendant's "expertise and reputation" as well as certain connections inside the management of the bank. (241 AD2d at 123.) It simply cannot be argued that CBS acted as Rather's agent when Rather employed his own agent to negotiate with CBS for Rather's benefit. Any claim to the contrary is belied by both the evidence and common sense.

We affirm dismissal of Rather's fraud claims against CBS and the individual defendants although we find that Supreme Court erred in its rationale for the dismissal as it also erred in rejecting the defendants' other challenges to the fraud claim.

We take judicial notice of Rather's second amended complaint (hereinafter referred to as SAC) filed by leave of Supreme Court

on July 27, 2009, and by separate order, as a matter of discretion in the interest of judicial economy, we deny Rather's motion to withdraw that portion of his appeal relating to the dismissal of his fraud claim.

The SAC repleads the fraud claim in an attempt to remedy the defects to which Supreme Court pointed in its dismissal of the claim in its September 23, 2008 order. However, Supreme Court erred in its rationale for the dismissal in holding that Rather "failed to allege . . . that his financial compensation at HDNet . . . is less than he would have received had his contract been renewed." Thus, the mere inclusion of Rather's actual annual compensation at HDNet is not helpful to his case, and would not be helpful to his case before this Court at any future date.

Rather alleges that various misrepresentations (e.g., promises to publicly defend his reputation and to conduct an independent investigation into the 2004 broadcast, and assurances that CBS intended to use his talents fully and to extend his contract, which was due to expire on November 25, 2006) induced him to remain silent about his role in the broadcast and to remain with CBS, where he was allegedly "warehoused" until the completion of his contract. As a result, he alleges he suffered money and reputation damages. Relying on Rather's well-footnoted appellate brief, this Court was already cognizant of his argument that, following the completion of his CBS contract, his compensation at HDNet was less than the $4 million a year established as an approximate market rate for comparable journalists. However, for reasons set forth here, this information was not required for our analysis, and the lack of it was not the reason for affirming dismissal.

It is hornbook law that

> "[i]n an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to reply upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421 [1996], citing *Channel Master Corp. v Aluminium Ltd. Sales*, 4 NY2d 403 [1958].)

Supreme Court properly dismissed Rather's fraud claims for failure to allege pecuniary loss.

"The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the out-of-pocket rule. Under this rule, the loss is computed by ascertaining the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain. Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained. Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud." (*Lama*, 88 NY2d at 421 [internal quotation marks and citations omitted].)

Thus, under *Lama Holding Co.* and its progeny, Rather was required to plead that he had something of value, was defrauded by CBS into relinquishing it for something of lesser value, and that the difference between the two constituted Rather's pecuniary loss.

Rather's claim that, but for CBS's fraud, he could have had more remunerative employment than that which he ultimately obtained at HDNet is unavailing. "[T]he loss of an alternative contractual bargain . . . cannot serve as a basis for fraud or misrepresentation damages because the loss of the bargain was 'undeterminable and speculative.' " (*Lama*, 88 NY2d at 422, quoting *Dress Shirt Sales v Hotel Martinique Assoc.*, 12 NY2d 339, 344 [1963]; *see Geary v Hunton & Williams*, 257 AD2d 482 [1st Dept 1999].)

Rather claims, based on his value and the value of similar professionals in the industry, that he would have been paid $4 million annually from 2005 through 2010. However, while claiming that he had an "agreement-in-principle" with CBS in the summer of 2004 to extend his contract, he alleges in the amended complaint that he had an unwritten "proposal" that "contemplated" a contract extension, and the terms of the proposal were compensation of $4 million for the first 19 months and $2 million annually thereafter. Rather admits that, the broadcast and its aftermath aside, CBS was already contemplating that he would step down from the anchor position in 2006 and assume a reduced role.

As to lost opportunities in the trade, while Rather has shown his own track record of earnings and the earnings of other trade

professionals, his future earnings are speculative, because there is no basis to conclude that his employment status would not have changed, regardless of CBS's actions, once he determined to make the broadcast. Rather never identified a single opportunity with specified terms that was actually available to him and which he declined to accept because of CBS's actions.

Even if Rather pleaded pecuniary loss sufficiently to satisfy the *Lama* standard, his claim would nonetheless fail. Although allegations that defendants made statements to the general public, for example, that they falsely blamed Rather for alleged errors in the broadcast, may constitute a defamation claim (*see Morrison v National Broadcasting Co.*, 19 NY2d 453, 458-459 [1967]), they are time-barred. Furthermore, Rather's claim of underuse merely recasts his breach of contract claim in terms of fraud (*see Wegman v Dairylea Coop.*, 50 AD2d 108, 113 [1975], *lv dismissed* 38 NY2d 918 [1976]), and CBS's alleged promise to extend Rather's contract constitutes a nonactionable statement of future intent. (*See Laura Corio, M.D., PLLC v R. Lewin Interior Design, Inc.*, 49 AD3d 411, 412 [1st Dept 2008].)

Even if Rather had alleged "a breach of duty which is collateral or extraneous to the contract between the parties" (*Krantz v Chateau Stores of Canada*, 256 AD2d 186, 187 [1st Dept 1998] [internal quotation marks and citations omitted]), he failed to adequately allege damages.

To the extent Rather claims that he should have been released from the agreement earlier to pursue other opportunities, this claim is duplicative of his breach of contract claim. (*See Non-Linear Trading Co. v Braddis Assoc.*, 243 AD2d 107, 118 [1st Dept 1998].) Similarly, Rather's claim for breach of the implied covenant of good faith and fair dealing was properly dismissed by Supreme Court for being duplicative of his breach of contract claim. (*See Canstar v Jones Constr. Co.*, 212 AD2d 452 [1st Dept 1995].)

Finally, Supreme Court properly dismissed the claim of tortious interference with contract as against CBS and Viacom. First, CBS asserts correctly that Viacom is not a proper party to this action. Documentary evidence demonstrates that on December 31, 2005, Viacom (old Viacom) split into two publicly traded companies named Viacom (new Viacom) and CBS Corporation, the latter retaining all of the liabilities concerning CBS's broadcasting business. Thus, the motion court correctly found that new Viacom carries no liability for old Viacom's acts

in this suit. Second, as to the claim against CBS, the court correctly applied the economic interest doctrine to dismiss this claim against the corporate defendant. (*See White Plains Coat & Apron Co., Inc. v Cintas Corp.*, 8 NY3d 422 [2007].) Rather's bare allegations of malice do not suffice to bring the claim under an exception to the economic interest rule. (*See Ruha v Guior*, 277 AD2d 116 [1st Dept 2000].) Since on appeal, Rather has not addressed his argument as to this cause of action to the individual defendants, we deem the argument abandoned. In any event, there is no particularized pleading of allegations that the acts committed by the individual corporate employees were either beyond the scope of their employment or motivated by their desire for personal gain. (*See Petkanas v Kooyman*, 303 AD2d 303, 305 [1st Dept 2003].)

Accordingly, the judgment of the Supreme Court, New York County (Ira Gammerman, J.H.O.), entered April 14, 2008, dismissing the complaint as against the individual defendants, and bringing up for review an order, same court and J.H.O., entered April 11, 2008, which, inter alia, granted defendants' motion to dismiss the complaint to the extent of dismissing the causes of action for fraud, breach of the implied covenant of fair dealing, and tortious interference with prospective business relations, and denied the motion to the extent it sought to dismiss the causes of action for breach of contract and breach of fiduciary duty, should be modified, on the law, to grant the motion to dismiss the causes of action for breach of contract and breach of fiduciary duty, and otherwise affirmed, with costs. Judgment, same court and J.H.O., entered September 30, 2008, dismissing the amended complaint as against Viacom, Inc. and dismissing the causes of action for fraud and tortious interference with contract as against CBS Corporation, and bringing up for review an order, same court and J.H.O., entered September 23, 2008, which granted CBS and Viacom's motion to the extent it sought to dismiss the causes of action for fraud and tortious interference with contract and denied the motion to the extent it sought to dismiss the cause of action for breach of fiduciary duty, should be modified, on the law, to dismiss the remaining causes of action against CBS, and otherwise affirmed, with costs. Plaintiff's appeals from the aforesaid orders should be dismissed, without costs, as subsumed in the appeals from the respective judgments. The Clerk is directed to enter judg-

ment in favor of defendant CBS dismissing the amended complaint as against it.

GONZALEZ, P.J., BUCKLEY, McGUIRE and RENWICK, JJ., concur.

Judgment, Supreme Court, New York County, entered April 14, 2008, modified, on the law, to grant the motion to dismiss the causes of action for breach of contract and breach of fiduciary duty. Judgment, same court, entered September 23, 2008, modified, on the law, to dismiss the remaining causes of action against CBS. Appeals from the aforesaid orders unanimously dismissed, as subsumed in the appeals from the respective judgments.