| **Dorilton Capital Mgt. LLC v Stilus LLC** |
|:---:|
| 2025 NY Slip Op 30605(U) |
| February 21, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 652428/2023 |
| Judge: Andrew Borrok |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 53

------------------------------------------------------------------------------------X

DORILTON CAPITAL MANAGEMENT LLC,WILLIAMS IP HOLDINGS LLC,

Plaintiff,

- v -

STILUS LLC,CLAUDIA SCHWARZ,

Defendant.

| | |
|---|---|
| **INDEX NO.** | 652428/2023 |
| **MOTION DATE** | 06/28/2024, 11/27/2024, 11/08/2024, 12/09/2024, 01/15/2025 |
| **MOTION SEQ. NO.** | 024 028 029 030 032 |

**DECISION + ORDER ON MOTION**

------------------------------------------------------------------------------------X

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 024) 410, 411, 412, 520, 521, 579

were read on this motion to/for                    SEAL                    .

The following e-filed documents, listed by NYSCEF document number (Motion 028) 496, 497, 498, 499, 519, 530

were read on this motion to/for                    SEAL                    .

The following e-filed documents, listed by NYSCEF document number (Motion 029) 457, 458, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 485, 486, 487, 488, 489, 490, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 580

were read on this motion to/for          JUDGMENT - SUMMARY          .

The following e-filed documents, listed by NYSCEF document number (Motion 030) 514, 515, 516, 517, 518, 578

were read on this motion to/for                    SEAL                    .

The following e-filed documents, listed by NYSCEF document number (Motion 032) 563, 564, 565, 566, 567, 568, 569, 570, 571, 572, 574, 576, 577, 585, 586, 587

were read on this motion to/for                 DISCOVERY                 .

652428/2023   DORILTON CAPITAL MANAGEMENT LLC ET AL vs. STILUS LLC ET AL          Page 1 of 13
  Motion No.  024 028 029 030 032

1 of 13

The plaintiffs in this case have taken the position that Peter de Putron is *merely* "an outside investor" and that, as such, he is not subject to the jurisdiction of this Court and that the interest in maintaining confidentiality as to his identity far outweighs the public interest in disclosure (22 NYCRR 216[a]).  They have also indicated that he is not subject to the jurisdiction of this Court. On the developed record, none of this appears to be the case.

Mr. de Putron is the owner of one of the plaintiffs, Williams IP Holdings LLC (**WIPH**) which has availed itself of the New York forum in bringing this lawsuit.[1]  As discussed below, the record establishes that he is not merely just a passive outside investor.  He is much more than that.  Indeed, according to certain of WIPH's employees, Mr. de Putron (or "Our Dear Leader" aka "ODL" as he is internally referred to) makes "all significant decisions" (including the decisions that are at the heart of the issues in this case) for Dorilton Capital Management LLC (**Dorilton**) the other named plaintiff – and WGPE (hereinafter defined), a company owned by the plaintiff group.  In fact, according to the former Chief Executive Officer (**CEO**) of WGPE, Jost Capito, Mr. de Putron approved the budget for expenses -- $6.9 million of which are among the reasons that the plaintiffs came to Court in the first instance:[2]

---

[1] Pursuant to Section 24.7 of the WIPH Agreement (hereinafter defined), the parties agreed that the WIPH was governed by New York law and that each party submitted to the exclusive jurisdiction of the Courts of New York, New York. Pursuant to Section 20 of the Dorilton Agreement (hereinafter defined), the parties agreed that the Dorilton Agreement was also governed by New York law.

[2] The Complaint does not allocate the $6.9 million claimed as damages between invoices submitted in connection with the Dorilton Agreement and the WIPH Agreement or as to the other claims in the case.  The agreements do not have identical provisions with respect to the negotiated rights for the claw-back of money.  In addition, it simply is not clear from the WIPH Agreement if Quote 1299, which sets forth compensation, required the performance of the number of hours set forth on the exhibit or if it was merely an estimate for the purpose of agreement as to a flat fee which was billed in monthly installments and that costs in excess of that required additional proposal and agreement. This understanding appears consistent with the manner in which the Dorilton Agreement works.  The WIPH Agreement contemplates audit and claw back of expenses.  The audit is set forth in Section 12.1.  It provides for WIPH's right to inspect and audit Stilus' records relating to the calculation of expenditures that are reimbursable by WIPH under the WIPH Agreement:

**652428/2023   DORILTON CAPITAL MANAGEMENT LLC ET AL vs. STILUS LLC ET AL**          **Page 2 of 13**
  Motion No.  024 028 029 030 032

2 of 13

12.1 The Consultancy shall maintain Records in respect of all expenditure that is reimbursable by the Client under this Agreement for the duration of this Agreement and for a period of five (5) years thereafter. The Client or its duly authorized representative shall have the right at any reasonable time during business hours at its own expense to inspect and audit the Records as well as any other relevant data relating to the calculation of the expenditure that is reimbursable by the Client under this Agreement. In the event such inspection reveals an overpayment the Consultancy shall immediately account to the Client for any such overpayment. In the event such inspection reveals an overpayment of five per cent (5%) ore more the Consultancy shall also reimburse the Client for the costs of such inspection.

(NYSCEF 535 § 12.1). Expenses are defined in Section 6.3 of the WIPH Agreement and are third party costs:

6.3 Expenses: Other expenses including couriers, media monitoring, specialist subscriptions, travel, accommodation and subsistence (in accordance with the Client's travel policy, if any) ("Expenses") incurred specifically in the performance of the Services, other than House/Office Costs and Programme Costs (as defined in this Agreement) shall be charged to the Client at cost.

(*Id.* § 6.3). Compensation on the other hand is set forth in Section 5 of the WIPH Agreement:

**5 FEES**

5.1 The Consultancy's Fees for the Services shall be set out in the Proposal.

5.2 If it is agreed that the Consultancy shall provide services that are outside the scope of the Services, or that the scope of an agreed Campaign shall be extended, the Consultancy reserves the right to charge a further fee for any such additional work. Any such additional fee shall be subject to the Client's prior written approval, such Approval not to be unreasonably withheld, conditioned or delayed.

(*Id.* § 5). Thus, compensation (which is not part of the definition of Expense) which is what is set forth on Quote 1299 does not appear to be subject to audit such that it appears that the agreement was for a fixed fee that covered up to the services set forth in Quote 1299 but if Stilus incurred additional costs by spending more than that set forth on Quote 1299, additional negotiation and proposal and acceptance would need to occur. Put another way, Quote 1299 seems to set forth a cap on the plaintiffs' exposure up to the services set forth Quote 1299 not a floor of services that Stilus needed to perform to earn such compensation. As indicated above, the Dorilton Agreement contemplates a monthly fee as well. Monthly invoices for Services are paid within 30 days:

3. **Fees and Expenses**:

(a) Company shall pay Consultant the fees in accordance with Schedule 1. Monthly invoices for Services rendered shall be provided to Company within five (5) business days after the end of the applicable calendar month and Company shall remit payment for all undisputed invoices within thirty (30) days of Company's receipt thereof. All expenses must be approved in advance and any invoices must be itemized and submitted in detail to the Person designated by Company. All invoices for out-of-pocket expenses shall be accompanied by appropriate substantiation. All invoices must be received by Company within sixty (60) days after the Services are complete.

(NYSCEF 534 § 3[a]). The Schedule 1 of the Dorilton Agreement includes a monthly retainer or flat fee of $29,170 per month:

**SERVICES**: Consultant shall provide marketing services to Company and its Affiliates that shall include (but are not limited to): (i) creating, distributing, and marketing content for Company's and its Affiliates' brands; (ii) improving and enhancing consumer engagement and experiences; and (iii) providing marketing-related strategy and planning for Company and its Affiliates. Consultant shall provide such other services as the parties may agree to from time to time, as may be detailed in a mutually agreed upon amendment or statement of work to this Agreement.

**FEES:** Company shall pay Consultant $29,170 USD per month from the Effective Date.

(*Id.* at 12). The Dorilton Agreement also has a different audit provision from the WIPH Agreement:

4. **Audit Rights**: Company shall have the right, at its expense and upon reasonable notice during Consultant's regular business hours, to review, or have its agent review, Consultant's books and records as they pertain to the Services. Consultant shall maintain accurate and complete records related to the fees and expenses charged to Company, including the costs of any materials, software and hardware purchased for Company, if applicable. All records shall be maintained in accordance with generally accepted accounting principles consistently applied and in such a manner as may be readily audited by Company. All books and records relating to the Services must be maintained for at least two (2) years following the conclusion of the Services to which they relate.

(*Id.* § 4).

652428/2023   DORILTON CAPITAL MANAGEMENT LLC ET AL vs. STILUS LLC ET AL                 Page 3 of 13
Motion No.  024 028 029 030 032

[* 3]

3 of 13

Q       All right. Now, are you familiar with an individual named Peter De Putron?

A       Yes.

…

Q       Is it fair to say that all those significant decisions concerning WGPE and Dorilton are made by Mr. De Putron?

A       Yes.

MS LEVIN: Object to form.

BY MR. FREIDMAN:

Q       Is it fair to say that all the significant financial decisions about WGPE and Dorilton are made by Mr. De Putron?

A       I just defined what is major significant. I think the budget – the budget had to be approved.

Q       Okay. And so – and that was my next question. So Mr. De Putron, he was the individual that would approve the budgets for WGPE; is that correct?

A       Yeah. Yes.

Q       Did Mr. De Putron also have to approve any significant costs that were incurred by either WGPE or Dorilton?

MS. LEVIN: Objection to the form.

THE WITNESS: I assume so.

BY MR. FRIEDMAN:

Q       Okay. And to your knowledge, did Mr. De Putron approve the costs in relation to WIPH?

A       I assume so too. But I was not involved in message on it – it was ODL, I didn't know who was that or what was about and what it means. And then I got – the clarification from Matthew Savage that it stands for our dear leader and it means Peter De Putron.

Q       And you said "our dear leader"; is that correct?

**652428/2023   DORILTON CAPITAL MANAGEMENT LLC ET AL vs. STILUS LLC ET AL**          **Page 4 of 13**
**Motion No.  024 028 029 030 032**

4 of 13

[* 4]

A      Yes.

Q      Okay. Now, were you ever told not to use Peter De Putron's full name in discussions in regards to your position?

A      Yes. Yeah.

Q      Who told you that?

A      That was told by – by Matthew, by the Board in general, was clear that Peter De Putron is in the background and doesn't want to be known or seen that he's the owner of Williams.

…

Q      So I understand what you're saying. You're saying that sponsors would not or did not like a racing team that would spend money on sustainability?

A      No. I think the sponsors and companies who come into – motor sports, they expect – and – and – and – what will I say – they demand sustainability strategy.

Q      Okay. So sponsors want a sustainability strategy in order so the company will basically do well for the environment, correct?

A      Exactly. Yeah.

Q      Okay. And so Williams Racing, then, their strategy was don't do it unless it was cost effective, correct?

A      That was not the William's strategy. That was the – the – I will say the requirement and demand from Peter. It was not the Williams strategy. When I joined – when I was asked if I would come in as the CEO of Williams, my – I discussed with the Board that for me sustainability is very important, and especially like Formula 1. The key followers of Formula 1 are not the leaders and pushing sustainability forward – as much forward as other groups do. And therefore, I said, Formula 1 can deliver a lot, and if they can deliver a lot in sustainability, convince people to be more sustainable, to do more for – for the environment.

…

Q      Did you personally ever review any documents to demonstrate that WPGE – that – excuse me – that Stilus ever went over budget?

A      No.

Q      Were you ever notified by Matthew Savage, any member of the Board, or Peter De Putron that Ms. Schwarz and her marketing team went over budget?

**652428/2023   DORILTON CAPITAL MANAGEMENT LLC ET AL vs. STILUS LLC ET AL**            **Page 5 of 13**
**Motion No.  024 028 029 030 032**

5 of 13

[* 5]

A      No.

(NYSCEF Doc. No. 471 at 3:22–5:16, 6:9–7:9, 14:3–14:10).

To be clear, the plaintiffs dispute the testimony of ***their affiliates' former CEO.***  According to Mathew Savage, the Chairman of the Board of Dorilton, he made the decisions.  However, as it relates to the motions for sealing, it is clear now that it is simply inappropriate for plaintiffs to redact Mr. de Putron's name on the basis that he is merely a third-party passive investor.  As such, the sealing motions (Mtn. Seq. Nos. 024, 028, 030) must be denied to the extent that they seek to seal documents with his name.  All previously uploaded documents with his name redacted must be replaced without such redactions because it is now clear that redacting Mr. de Putron's name to protect the confidentiality of his identity in this dispute is not appropriate.  The plaintiffs must upload these replacement documents no later than Wednesday, February 26, 2025, at 5 pm.

It also appears that Mr. de Putron may well be subject to this Court's jurisdiction given that he appears to have been a primary actor with respect to the budget and other issues at issue in this case (having made "all significant decisions;" *Matter of Renren, Inc.*, 192 AD3d 539 [1st Dept 2021] [finding personal jurisdiction where "the directors and majority shareholders were primary actors with respect to the transaction at issue"]).  His plaintiff companies had agreed to litigate exclusively in New York and have.  It is entirely foreseeable that he would need to come to New York for, among other things, a deposition.  Leave is granted to the defendant to reargue and

652428/2023   DORILTON CAPITAL MANAGEMENT LLC ET AL vs. STILUS LLC ET AL
Motion No.  024 028 029 030 032

Page 6 of 13

6 of 13

[* 6]

renew prior decisions based on the foregoing.[3]  It does not matter at this stage that people who are employed by companies that Mr. de Putron owns or controls attempts to downplay his role given Mr. Capito's critical testimony on this issue at this stage.  In any event, discovery of Mr. de Putron's electronic devices is entirely appropriate both as to jurisdictional discovery and as to merits issues and must go forward.

Reference is made to (i) certain prior decisions of this Court (NYSCEF Doc. Nos. 192, 208, 376, 415, and 522; hereinafter, collectively, the **Prior Decisions**), (ii) the Stilus Public Relations Consultancy Terms of Business for the Project with Williams (NYSCEF Doc. No. 535; the **PR Agreement**), dated February 15, 2022 by and between Stilus LLC (**Stilus**) and William IP Holdings LLC (**WIPH**) together with a certain Quote 1299 (the **Quote 1299;** NYSCEF Doc. No. 536; the PR Agreement, together with the Quote 1299, hereinafter collectively, the **WIPH Agreement**), dated March 18, 2022 by and between WIPH and Stilus,[4] and (iii) a certain Consulting Agreement (NYSCEF Doc. No. 534; the **Dorilton Agreement**), dated March 10, 2022 by and between Dorilton and Stilus.  The facts of this case are set forth in the Prior Decisions.  Familiarity is presumed.

Dorilton, the other named plaintiff -- is a private investment firm and through its affiliates is the owner of Williams Grand Prix Engineering (**WGPE**) (NYSCEF Doc. No. 2 ¶¶ 3, 15). On or

---

[3] For the avoidance of doubt, to the extent that the Court previously held otherwise, this simply was not clear to the Court on the record presented then.

[4] As the Florida Court has already addressed in *Williams IP Holdings, LLC v Schwarz*, the Quote 1299 is not a separate independent contract (394 So. 3d 199 [Fla. 3d DCA 2024]). It is part of the WIPH Agreement which contemplates future proposals. Quote 1299 is such a proposal and is subsumed in the WIPH Agreement. WIPH does not provide for compensation, but the Quote 1299 does. As the Florida Court held, and as relevant to this motion, the permissive forum selection clause in the Quote 1299 is superseded by the mandatory forum selection clause in the WIPH Agreement. As discussed above, the WIPH Agreement is governed by New York law.

**652428/2023   DORILTON CAPITAL MANAGEMENT LLC ET AL vs. STILUS LLC ET AL**          **Page 7 of 13**
   **Motion No.  024 028 029 030 032**

about October 2021, Dorilton transferred certain assets from WGPE to WIPH (*id.* ¶ 33). WIPH manages marketing and sponsorship for WGPE (*id.* ¶ 3).

As relevant, on May 18, 2023, the plaintiffs commenced this action against Stilus for (i) breach of the Dorilton Agreement, (ii) breach of the WIPH Agreement, (ii) breach of implied covenant of good faith and fair dealing (iv) fraud and (v) unjust enrichment, and as against Ms. Schwarz for (vi) aiding and abetting fraud and (vii) unjust enrichment (*id. ¶¶* 94-136).

Now, the defendants move (Mtn. Seq. No. 29) for summary judgment to have the Court dismiss (I) the cause of action sounding in aiding and abetting fraud (fifth cause of action) as against Ms. Schwarz and (II) the cause of action sounding in unjust enrichment (sixth cause of action) to the extent it is asserted against Ms. Schwarz.

On a motion for summary judgment, the movant "must make a *prima facie* showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986], citing *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]).  The opposing party must then "produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact" that its claim rests upon (*Zuckerman v New York*, 49 NY2d 557, 562 [1980]).

## 1.  Aiding and Abetting Fraud

In support of her motion for summary judgment, Ms. Schwarz alleges that first the Court must decide whether Florida law or New York law governs the dispute.  However, Ms. Schwarz fails

652428/2023   DORILTON CAPITAL MANAGEMENT LLC ET AL vs. STILUS LLC ET AL          Page 8 of 13
Motion No.  024 028 029 030 032

8 of 13

[* 8]

to identify an actual conflict between Florida and New York law (*see e.g.*, *Gilison v Flagler Bank*, 303 So. 3d 999 [Fla. 4th DCA. 2020]; *Logan v Morgan, Lewis & Bockius LLP*, 350 So. 3d 404 [Fla.2nd DCA 2022]; *Wadlington v Continental Medical Services, Inc.*, 907 So. 2d. 631 [Fla. 4th DCA 2005]; *see also* (*Stanfield Offshore Leveraged Assets, Ltd. v Metro. Life Ins. Co.*, 64 AD3d 472, 476 [1st Dept 2009]; *Genger v Genger,* 152 A.D.3d 444, 445, 55 N.Y.S.3d 658 [1st Dept. 2017]).  Under New York law, this is required:

> The first step under New York's choice of law analysis is to determine whether there is an actual conflict between the laws of the two jurisdictions involved (*In re Allstate Ins. Co. and Stolarz*, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 613 N.E.2d 936 [1993]). Courts will not engage in a choice of law analysis in the absence of an actual conflict.

(*Angiolillo v Christie's, Inc.*, 64 Misc 3d 500, 517-518 [Sup Ct 2019], *affd, appeal dismissed*, 185 AD3d 442 [1st Dept 2020]).  Having failed to identify a conflict, no choice of law analysis is appropriate.

In addition, the Court notes that the parties agreed in the WIPH Agreement that New York law governs (NYSCEF Doc. 535 §24.7).  In the Dorilton Agreement, the parties agreed that the agreement should be construed in accordance with New York law "without giving effect to its conflict of laws rules" (NYSCEF Doc. No. 534 §20).

Putting that aside, the motion to dismiss the Complaint's aiding and abetting fraud claim is granted without prejudice with leave to file an amended complaint.  The plaintiffs' aiding abetting fraud claim (NYSCEF Doc. No. 2 ¶¶ 120-127) appears to be the same as the breach of contract causes of action (*id.,* ¶¶94-**97f** and **g** [emphasis added] and 98-102 **g and h** [emphasis added]).

**652428/2023   DORILTON CAPITAL MANAGEMENT LLC ET AL vs. STILUS LLC ET AL**       **Page 9 of 13**
   **Motion No.  024 028 029 030 032**

[* 9]

9 of 13

A claim for fraud however is not duplicative of a breach of contract claim when conduct alleged to form the predicate for the fraud is collateral to the contract and where the damages are different from those sought on the breach of contract claim (*see IS Chrystie Mgt. LLC v ADP*, LLC, 205 AD3d 418 [2022]; *MBIA Ins. Corp. v. Credit Suisse Sec. [USA], LLC,* 165 AD3d 108, 114 [1st Dept 2018]).

As discussed (*tr. 2.20.25*), the complaint fails to identify which portion of the $6.9 million of alleged damages are being allocated to the fraud claim as it relates to third party invoices and not work alleged to have been performed by Stilus or pursuant to the monthly agreed upon amounts (which do not appear to have required minimum hours but instead appear to require additional negotiation if those hours were in fact exceeded [*see, Ho v Star Constrs., Inc.*, 226 AD3d 511 (2024)]). This requires clarification. Leave is granted to the plaintiff to file an amended complaint within 30 days of this decision and order.

### 2. Unjust enrichment claim

The defendants also fail to identify a conflict of law as to the unjust enrichment claim warranting a choice of law analysis (*see e.g.*, *CFLB P'ship, LLC v Diamond Blue Int'l, Inc*., 352 So. 3d 357 [Fla. 3rd DCA 2022]; *Fulton v Brancato*, 189 So. 3d 967 [Fla. 4th DCA 2016]; *Ocean Commc'ns, Inc. v Bubek,* 956 So. 2d. 1222 [Fla. 4th DCA 2007]; *see also Farina v. Bastianich*, 116 A.D.3d 546, 548, 984 N.Y.S.2d 46, 49 [1st Dept. 2014]; *Wiener v Lazard Freres & Co.*, 241 A.D.2d 114, 672 N.Y.S.2d 8 [1st Dept. 1998]*; Clark-Fitzpatrick, Inc. v Long Island R. Co.,* 70 N.Y.2d 382, 389, 516 N.E.2d 190, 193 [1987]). In support of their motion, the defendants argue

652428/2023   DORILTON CAPITAL MANAGEMENT LLC ET AL vs. STILUS LLC ET AL
Motion No.  024 028 029 030 032

Page 10 of 13

10 of 13

that it is undisputed that Ms. Schwarz received none of the benefits directly as to the alleged unjust enrichment claim – only Stilus did. Thus, they argue the claim fails.

In their opposition papers, and relying on *Lee v Kylin Management LLC* (US Dist Ct, SD NY, 17 Civ 7249, Furman, J., 2019), the plaintiffs argue that third parties can be held accountable under a theory of unjust enrichment. Although true, *Lee* is inapposite. The court in that case permitted the filing of a second amended complaint as against a third party where the elements of unjust enrichment were otherwise met. To wit, in that case, and significantly, Ted Kang was alleged to have received a portion of the disputed funds. It is undisputed in this case that Ms. Schwarz received none. As such, the motion to dismiss the unjust enrichment claim against her is granted.

It would appear in fact that the unjust enrichment claim also fails as against Stilus because "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract [e.g., in unjust enrichment] for events arising out of the same subject matter." (*Id.* at *2 citing *In re First Cent. Fin. Corp.,* 377 F3d 209, 213 [2d Cir 2004], citing *Clark-Fitzpatrick, Nc. v Long Island R.R. Co.*, 516 NE2d 190, 193 [NY 1987]). In filing the amended complaint should the plaintiffs seek to level a claim of unjust enrichment against Stilus, it will be necessary for them to articulate what the basis for the claim is that is not otherwise governed by the written contracts between the parties.

Finally, the plaintiffs' motion for a more detailed privilege log is denied. Pursuant to CPLR 3122(b):

(b) Whenever a person is required pursuant to such a notice, subpoena duces tecum or order to produce documents for inspection, and where such person withholds one or more documents that appear to be within the category of the documents required by the notice, subpoena duces tecum or order to be produced, such person shall give notice to the party seeking the production and inspection of the documents that one or more such documents are being withheld. This notice shall indicate the legal ground for withholding each such document, and shall provide the following information as to each such document, unless the party withholding the document states that divulgence of such information would cause disclosure of the allegedly privileged information: (1) the type of document; (2) the general subject matter of the document; (3) the date of the document; and (4) such other information as is sufficient to identify the document for a subpoena duces tecum.

It appears that the defendants have provided an appropriate privilege log (NYSCEF Doc. No. 587). To the extent that the plaintiffs want to challenge any particular item, they have sufficient information to do so.

Accordingly, it is hereby

ORDERED that the plaintiffs' motions to seal (Mtn. Seq. No. 024, 028, 030) are DENIED; and it is further

ORDERED that the plaintiffs are directed to upload redacted documents in accordance with the above; and it is further

ORDERED that service upon the Clerk of the Court shall be made in accordance with the procedures set forth in the *Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on the court's website).

652428/2023   DORILTON CAPITAL MANAGEMENT LLC ET AL vs. STILUS LLC ET AL          Page 12 of 13
Motion No.  024 028 029 030 032

12 of 13

ORDERED that the defendant's motion (Mtn. Seq. No. 029) is GRANTED dismissing the fifth and sixth causes of action without prejudice; and it is further

ORDERED that the plaintiffs may file an amended complaint within 30 days of this Decision and Order in accordance with the above; and it is further

ORDERED that the plaintiffs' motion (Mtn. Seq. No. 032) is DENIED.

20250221152154AB0RR0K05321A1DDD2B4378A7786B399FADF37B

| 2/21/2025 | | | | | ANDREW BORROK, J.S.C. | |
|---|---|---|---|---|---|---|
| **DATE** | | | | | | |

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

652428/2023   DORILTON CAPITAL MANAGEMENT LLC ET AL vs. STILUS LLC ET AL          Page 13 of 13
Motion No.  024 028 029 030 032

13 of 13